**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0000714**
**03-MAR-2016**
**08:49 AM**

NO. CAAP-11-0000714

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
RAMON MARIANO GONZALEZ, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CRIMINAL NO. 09-1-308K)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding J., Leonard and Reifurth, JJ.)

Defendant-Appellant Ramon Mariano Gonzalez (**Gonzalez**)
appeals from the Judgment of Conviction and Sentence entered
September 29, 2011 in the Circuit Court of the Third Circuit[1]
(**circuit court**). Gonzalez was convicted of the offense of sexual
assault in the fourth degree, Hawaii Revised Statutes (**HRS**)
§ 707-733(1)(a) (2014 Repl.).

Gonzalez contends the circuit court erred by:

(1) denying his March 15, 2010 "Motion to Quash
Indictment Based on Excessive Hearsay in Grand Jury Proceedings";

(2) denying his September 27, 2010 "Motion to Suppress
DNA Evidence Based on Failure of Chain of Custody" (**Motion to
Suppress DNA Evidence**);

(3) refusing to allow Gonzalez to present evidence of
prior allegations of sexual assault by the complaining witness
(**CW**) that were subsequently recanted;

(4) denying his September 27, 2010 "Motion For [a
Hawaii Rules of Evidence (**HRE**) Rule 104 (1993)] Hearing Regarding

---

[1]     The Honorable Elizabeth A. Strance presided.

Prior Sexual Assault Allegations made by [CW]" to exclude CW's testimony for lack of competency and for denying his motion to strike CW's trial testimony based on lack of competency;

(5) failing to grant Gonzalez's February 14, 2011 "Motion in Limine No. 5 or in the Alternative to Suppress and/or Strike DNA Evidence Based on Detective David Araki's Alteration and/or Tampering of Evidence and Property Receipts, and the State of Hawai'i's Failure to Establish Chain of Custody and/or in the Alternative, Motion for Mistrial" (**Motion in Limine No. 5**) regarding the alteration by the police of evidence and property receipts and admission of DNA evidence;

(6) refusing to grant his February 17, 2011 "Motion For Judgment of Acquittal on Count 1 of the Indictment Pursuant to Rule 29, Hawai'i Rules of Penal Procedure [(**HRPP**)]" (**1st Motion for Judgment of Acquittal on Count 1**);

(7) not allowing Gonzalez the opportunity to question CW's mother about her bias against Gonzalez's wife in connection with an estate case;

(8) denying Gonzalez's February 22, 2011 "Motion For Judgment of Acquittal on Count 1 of the Indictment Pursuant to [HRPP Rule 29], After All Parties Have Presented Their Case" (**2nd Motion for Judgment of Acquittal on Count 1**);

(9) denying Gonzalez's March 3, 2011 "Motion For a New Trial Pursuant to [HRPP Rule 33]" (**Motion for a New Trial**); and

(10) denying his July 5, 2011 "Motion for Reconsideration of (1) Motion For Judgment of Acquittal on Count 1 of the Indictment Pursuant to [HRPP Rule 29], and (2) Motion For New Trial Pursuant to [HRPP Rule 33], Based on Change in Law Subsequent to Disposition of Motions" (**Motion for Reconsideration**).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude Gonzalez's appeal is without merit.

**(1) The circuit court did not err in denying Gonzalez's motion to quash the indictment.**

2

"Dismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way, as where perjured testimony has knowingly been presented . . . ." State v. Mendonca, 68 Haw. 280, 283, 711 P.2d 731, 734 (1985) (internal quotation marks omitted.)

The circuit court did not err in allowing hearsay testimony before the Grand Jury in lieu of testimony by CW, who lived on another island. The HRE rule related to hearsay does not apply to grand jury proceedings. See HRE Rule 1101(d) (1993).

Three witnesses testified before the Grand Jury. First, Edythe Maeda, a witness counsel with the prosecutor's office, testified that CW was unavailable and residing on Maui. Next, police detective David Araki (**Detective Araki**) of the Hawai'i County Police Department, testified that he was involved in the investigation into an alleged sex assault against CW on April 11, 2009. He stated that CW was eighteen years old, and testified as to CW's account of the events of April 11, 2009. Third to testify was registered nurse Kim Page (**Nurse Page**), who does evaluations of victims of reported sex assaults. She testified that she examined CW on April 11, 2009.

Gonzalez argues that Plaintiff-Appellee State of Hawai'i (**State**) had an improper motive for using Detective Araki's testimony in place of CW's, because CW was not a believable or competent witness, and the State did not reveal to the Grand Jury that CW was allegedly mildly retarded. Detective Araki testified before the Grand Jury that "[CW] is kind of simple. She's eighteen, but, you know, she seems -- her mental age is a lot younger, at least to me." He also testified that when he asked CW why she did not react to the sexual assault when it happened, she "just had a . . . confused look." Additionally, Nurse Page testified that CW was "a little slow to answer questions at times, and that sort of thing." Gonzalez has not shown that the State had an improper motive.

The Grand Jury was presented with Detective Araki's recount of CW's statement to police, as well as his testimony

that the inside of CW's skirt tested positive for semen and the laboratory results matched Gonzalez's DNA.  Detective Araki's statement that Gonzalez asked for his lawyer was not significant in light of the evidence to indict Gonzalez.

**(2)  The circuit court did not err in admitting the DNA test results obtained from the black skirt.**

In his Motion to Suppress DNA Evidence, Gonzalez alleges the DNA evidence should be suppressed "due to failure of the chain of custody" of the evidence.  He notes that the DNA evidence was collected from the black skirt allegedly worn by CW at the time of the incident on April 11, 2009 and that the skirt was not received into custody until April 14, 2009 when the skirt was turned over to police by CW's mother.  Gonzalez alleged that the DNA evidence on the clothing "may have been tampered with or intermingled or contaminated by access to the clothing and bedding of the Gonzalez family, and thus must be suppressed."

In his Motion to Suppress DNA Evidence, Gonzalez never alleged that the State's obtaining of the DNA evidence involved a violation of his constitutional rights, violation of statute, or violation of an administrative rule.  Gonzalez argued only that the police did not secure the skirt (and DNA evidence contained thereon) until several days after the incident.  HRPP Rule 41(f) states that "[a] person aggrieved by an unlawful search and seizure of property may move the court having jurisdiction to try the offense to suppress for use as evidence by the State anything unlawfully obtained."

Gonzalez contends the DNA evidence should not have been admitted at trial due to lack of proper foundation, because the black skirt CW was wearing on the day of the alleged sexual assault was not recovered until four days after the incident occurred.

HRE Rule 901(a) (1993) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence to support a finding that the matter in question is what its proponent claims."

Despite the four days between the alleged incident and Detective Araki's recovery of the black skirt, the State introduced enough evidence for a juror to find that the black

4

skirt sent to the laboratory was the skirt that CW was wearing during the sexual assault. CW testified that she was wearing a black skirt. CW's mother, testified that State's Exhibit 21 was the black skirt that CW was wearing when she met up with CW on the morning following the incident. CW's sister also testified that she saw CW wearing a skirt to bed the night before the incident. Additionally, Nurse Page testified that during the Sexual Assault Nurse Examiner (**SANE**) exam, CW indicated that she had a skirt on during the assault that she was no longer wearing when she went to the SANE exam. This testimony was sufficient to "support a finding" that the black skirt sent to the laboratory was the skirt that CW was wearing during the alleged sexual assault.

Gonzalez argues that the three days between when the assault allegedly occurred and when Detective Araki obtained the skirt makes the DNA recovered from the skirt "wholly unreliable as the DNA clothing may have been tampered with, intermingled or contaminated by access to clothing and bedding of the Gonzalez family[.]" It was up to the jury to decide whether the DNA evidence was present on the skirt as a result of a sexual assault. Cf. Clark v. People, 32 P.3d 1287, 1293 (Colo. 2010) (holding that it was within the province of the jury to resolve how semen matching the defendant's DNA profile was deposited on two pieces of clothing owned by the complainant).

Gonzalez makes a number of arguments suggesting the State failed to sufficiently demonstrate chain of custody of the DNA evidence after the skirt was obtained by Detective Araki. There was ample evidence that it was "reasonably probable that tampering, substitution or alteration" of the black skirt and DNA located on the skirt did not occur. State v. DeSilva, 64 Haw. 40, 42, 636 P.2d 728, 730 (1981). Therefore, the circuit court did not abuse its discretion in determining that sufficient chain of custody existed for the DNA evidence and did not err in denying Gonzalez's Motion in Limine No. 5, Motion for Judgment of Acquittal on Count 1, Motion for New Trial, and Motion for Reconsideration, to the extent that they were premised on insufficient chain of custody for the DNA evidence.

Gonzalez also contends his constitutional right to confront adverse witnesses was violated where a second lab analyst who reviewed the findings of the DNA test did not testify at trial. The analyst responsible for actually conducting the DNA testing did testify at trial and was cross-examined by Gonzalez.

**(3) The circuit court did not err in finding that CW was competent to testify.**

On September 27, 2010, Gonzalez filed a "Motion For HRE Rule 104 Hearing Regarding Prior Sexual Assault Allegations Made by [CW]," asking the circuit court to make an advance ruling prior to trial regarding the competency of CW to testify.

The circuit court found in its January 18, 2011 order regarding the competency of CW, that she was 20 years old, knew the difference between a truth and a lie, and understood the oath to tell the truth. It further determined that "[CW] is a person with learning challenges, but she has no record of inability to tell the truth from a lie or from fantasy." These findings are supported by the evidence presented at the hearing.

CW's mother, testified that CW had some difficulties in comprehension at school and had an individualized educational program. A 2009 school report indicated that CW had a learning disability categorized as "mild mental impairment." Mother testified that CW's teachers advised her that she was in the very-low or low percentile for "broad math, math calculation skills, and broad reading." Mother stated that although CW could get distracted, Mother did not observe any memory problems, a history of lying or not being truthful. She testified CW attended public elementary school and high school, and was taking part in a Maui Jobs Corps program. According to mother, CW was doing well in the program and was attempting to get her high school diploma.

CW testified that when she was asked to swear to tell the truth in the courtroom, it meant "just to tell the truth and don't lie about anything." She stated that she sometimes would forget things. She also testified that it would be a lie if the attorney stated that a paper was green when the paper was in fact

yellow. CW indicated that she understood words such as "dog", "shoe" and "table" but not "accurate" or "consequences".

HRE Rule 603.1 (1993) provides that "[a] person is disqualified to be a witness if the person is (1) incapable of expressing oneself so as to be understood, either directly or through interpretation by one who can understand the person, or (2) incapable of understanding the duty of a witness to tell the truth." Here, the evidence established both that (1) CW was capable of expressing herself so as to be understood, and (2) understood what the oath meant, the difference between truth and a lie, and the duty of a witness to tell the truth. Accordingly, the circuit court did not abuse its discretion in deeming CW competent to testify.

**(4)  The circuit court correctly required Gonzalez to prove by a preponderance of the evidence that CW's prior allegation of sexual assault was false, and properly found that there was no recantation by CW.**

Gonzalez sought to introduce evidence and testimony at trial regarding CW's prior allegations of sexual assault by a family member in 2004 (**2004 Incident**). Following an HRE Rule 104 hearing regarding prior sexual assault allegations, the circuit court entered its February 22, 2011 2nd Motion for Judgment of Acquittal on Count 1 concluding that "[s]ince [Gonzalez] has not proven by a preponderance of the evidence that the [2004 Incident] was false, it falls within the protection of [HRE] Rule 412 [(Supp. 2015)]."

The circuit court heard testimony from CW, a police officer, a teacher, a social worker and a psychologist. It also reviewed exhibits, including a DVD from the 2004 Incident of an interview of CW. The circuit court found that it was not finding the 2004 Incident to be true, but instead found that Gonzalez had failed to demonstrate by a preponderance of the evidence that they were false.

Gonzalez had introduced a 2004 report from the Honolulu Police Department (**HPD**) Officer Hunter Ah Loo indicating CW had made inconsistent statements and changed her story in the 2004 Incident. A relative testified that CW had been known to make untrue statements in 2004, and another relative, said that CW

told him, in connection with the 2004 Incident, that she did not get raped.

During the 2004 hearing, HPD detective Phillip Blaine Lavarias (**Detective Lavaris**), testified that in 2004 he was investigating a reported sexual assault involving CW as part of a Child Protective Services case and was present during the video recorded interview between CW and a social worker. At the time of the interview, CW indicated that she was thirteen years old. Detective Lavaris indicated that in his experience investigating sexual assault cases over the course of five years, the majority involved allegations of sexual assault by family members, and that many times pressures are put on the children not to break up the family. He testified that some of the statements made by CW during the 2004 Incident interview, "such as her grandparents telling her that it could have never happened," could indicate that some pressure had been put on her not to tell the truth. An American Academy of Child and Adolescent Psychiatry article regarding recantations of child sexual abuse allegations was also entered into evidence.

The evidence of CW's recantation of her allegations in the 2004 Incident is not clear, and Detective Lavaris's testimony indicated that CW may have recanted due to familial pressures. Therefore we cannot conclude the circuit court erred in finding that CW's previous allegations fell within the purview of the Rape Shield Law, HRE Rule 412, and were therefore not admissible at trial. See State v. West, 95 Hawai'i 452, 460, 24 P.3d 648, 656 (2001) ("[W]here the trial court is unable to determine by a preponderance of the evidence that [a prior allegation of sexual assault] is false, the defendant has failed to meet his or her burden, and the evidence may be properly excluded.").

**(5) The circuit court did not err in limiting questions regarding the value of an estate managed by Gonzalez's wife on grounds of relevancy.**

Gonzalez contends the circuit court should have allowed him to ask additional questions of mother at trial regarding the value of an allegedly $12 million estate. Gonzalez alleged that this would call into question mother's credibility and show bias but since there was apparently no contested inheritance, evidence

of the size of the estate would only have served to confuse the jury with unnecessary side issues. See HRE Rule 403 (1993). Accordingly, we hold that the circuit court did not err in limiting the evidence on the value of the estate.

**(6)  Gonzalez's point of error alleging that a statement made by the prosecutor during closing referencing lesser-included offenses was prosecutorial misconduct is without merit.**

Gonzalez argues that the prosecutor engaged in misconduct in her closing statement when she stated, "[w]e are asking for a verdict of guilty of Sexual Assault in the First Degree, as charged, none of the lesser-included offenses that the defendant might want you to consider." Gonzalez did not object to the closing statement or ask for a curative instruction. He first raised this in his March 3, 2011 Motion for New Trial.

Claims of improper statements by prosecutors are evaluated "by first determining whether the statements are improper, and then determining whether the misconduct is harmless." State v. Tuua, 125 Hawai'i 10, 14, 250 P.3d 273, 277 (2011); see also State v. Maluia, 107 Hawai'i 20, 26, 108 P.3d 974, 980 (2005). In this case, there was no improper statement. "[C]losing argument affords the prosecution (as well as the defense) the opportunity to persuade the jury that its theory of the case is valid, based upon the evidence adduced and all reasonable inferences that can be drawn therefrom." State v. Rogan, 91 Hawai'i 405, 413, 984 P.2d 1231, 1239 (1999) (citing State v. Quitog, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)). Here, the State asked the jury to convict Gonzalez on the greater of the offenses presented by the jury instructions. By using the phrase, "none of the lesser-included offenses that the defendant might want you to consider[,]" it appears the State was drawing a reasonable inference that Gonzalez might prefer to be convicted of a lesser-included offense rather than the greater charged offense. Therefore the circuit court did not err in declining to grant a new trial.

**(7)  Gonzalez's other post-verdict motions were properly denied.**

Gonzalez's points of error also challenge the circuit court's denial of a number of Gonzalez's post-verdict motions.

9

All of those motions are based on the arguments discussed *supra*, and are without merit.

Therefore,

IT IS HEREBY ORDERED that the September 29, 2011 Judgment of Conviction and Sentence entered in the Circuit Court of the Third Circuit is affirmed.

DATED: Honolulu, Hawai'i, March 3, 2016.

On the briefs:

Robert D.S. Kim
for Defendant-Appellant.

Linda L. Walton
Deputy Prosecuting Attorney
County of Hawai'i
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

10